

[Tagged Opinion]

**ORDERED in the Southern District of Florida on September 15, 2010.**

**Erik P. Kimball, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| **In re:** | **CASE NO.: 09-25422-EPK** |
| **RICH CAPITOL, LLC d/b/a CAPITAL WALK APARTMENTS,** | **CHAPTER 11** |
|     **Debtor.** | |
| _____/ | |
| **RICH CAPITOL, LLC d/b/a CAPITAL WALK APARTMENTS,** | **ADV. NO.: 09-01965-EPK** |
|     **Plaintiff,** | |
|  **v.** | |
| **WACHOVIA BANK, N.A.,** | |
|     **Defendant.** | |
| _____/ | |

**ORDER GRANTING DEFENDANT, WACHOVIA BANK, N.A.'S MOTION FOR
SUMMARY JUDGMENT AGAINST PLAINTIFF, RICH CAPITOL, LLC [DE 54]**

In its *Verified Complaint for Equitable Subordination* (the "Complaint") [DE 1],

Plaintiff, Rich Capitol, LLC (the "Debtor") seeks judgment against Wachovia Bank, N.A.

("Wachovia") pursuant to 11 U.S.C. § 510(c), equitably subordinating Wachovia's claims to the

claims of general unsecured creditors and to equity interests in the Debtor. The Debtor states that Wachovia improperly refused to convert the Debtor's construction loan to permanent financing, allegedly in violation of the parties' loan documentation, and sought to collect on Wachovia's loan to the Debtor in various ways, in an attempt to coerce dismissal of a lawsuit brought by the Debtor, the Debtor's principals, and an affiliate of the Debtor against Wachovia. The Debtor argues that Wachovia's actions constitute inequitable conduct injurious to the Debtor's creditors, meriting equitable subordination of Wachovia's claims.

Wachovia states that it determined not to convert the Debtor's construction loan to permanent financing because the Debtor did not satisfy the requirements of the loan agreement, that the lawsuit brought by the Debtor, the Debtor's principals and the Debtor's affiliate against Wachovia had no impact on Wachovia's decision not to continue its lending relationship with the Debtor, that the Debtor is precluded from litigating certain issues here as a result of a judgment in that suit, and that Wachovia's collection activity was specifically authorized by the relevant loan documents.

The Court has considered the *Defendant, Wachovia Bank, N.A.'s Motion for Summary Judgment Against Plaintiff, Rich Capital, LLC* [DE 54] (the "Motion"), the *Plaintiff's Response and Memorandum of Law in Opposition to Defendant, Wachovia Bank, N.A.'s Motion for Summary Judgment Against Plaintiff, Rich Capitol, LLC* [DE 67] (the "Response"), the *Defendant, Wachovia Bank, N.A.'s Reply to Plaintiff's Response and Memorandum of Law in Opposition to Defendant, Wachovia Bank, N.A.'s Motion for Summary Judgment Against Plaintiff, Rich Capitol, LLC* [DE 78] (the "Reply"), the *Joint Stipulation of Facts Pursuant to Order Setting Briefing Schedule on Defendant's Motion for Summary Judgment* [DE 68] (the "Stipulation of Facts"), the *Affidavit of Mary Beth Gordish in Support of Defendant, Wachovia*

*Bank, N.A.'s Reply to Plaintiff's Response and Memorandum of Law in Opposition to Defendant, Wachovia Bank, N.A.'s Motion for Summary Judgment Against Plaintiff, Rich Capitol, LLC* [DE 77] (the "Affidavit"), and the pleadings, discovery and disclosure materials on file in this case.

Because each of Wachovia's actions vis-a-vis the Debtor was permitted under the parties' loan documents, Wachovia filed the Affidavit rebutting the Debtor's allegations that Wachovia acted in bad faith, and the Debtor offered no material contradictory evidence, there is no genuine issue of material fact and Wachovia is entitled to judgment as a matter of law. The Court will enter a separate judgment in favor of Wachovia, denying the relief requested by the Debtor in this adversary proceeding.

I.      Background and Relevant Facts

The Debtor developed and operates an apartment complex known as Capital Walk Apartments located in Leon County, Florida ("Capital Walk"). Wachovia financed the construction of Capital Walk.

On November 20, 2006, the Debtor executed and delivered to Wachovia: (1) a promissory note (the "Note") in the original principal amount of $20,750,000.00; (2) a First Mortgage and Security Agreement (the "Mortgage"), granting to Wachovia a security interest in the real property on which Capital Walk was to be built (the "Mortgaged Property"), and an Absolute Assignment of Leases and Rents relating thereto (the "Assignment of Rents"); and (3) a Construction Loan Agreement (the "Loan Agreement," and with the Note, Mortgage, Assignment of Rents, and Guarantees (defined below), collectively, the "Loan Documents"). Under the Loan Documents, the Debtor agreed to use all amounts advanced under the Note for construction purposes on the Mortgaged Property.

Jerome Rich and Jodi Rich, the sole members of the Debtor, each executed a Guaranty Agreement in favor of Wachovia (together, the "Guarantees"), guarantying payment of all amounts due under the Loan Documents, among other things.

Under the Loan Documents, the Debtor granted to Wachovia a mortgage lien on the Capital Walk project, a security interest in substantially all personal property of the Debtor including, without limitation, property of the Debtor at any time in possession of Wachovia, and a lien on the rents generated by the Capital Walk apartments.

The Loan Documents authorize Wachovia to take a variety of remedial actions should the Debtor default on its obligations thereunder. For example, Section 12 of the Note includes a typical acceleration clause. Section 8.2 of the Loan Agreement authorizes Wachovia to terminate its loan commitment, cease making advances, and accelerate the outstanding debt, among other remedies. Article 8 of the Mortgage addresses various remedial actions. Section 8.1 of the Mortgage permits acceleration of the debt. Section 8.2 of the Mortgage authorizes Wachovia to take possession of Capital Walk and apply the rents, with or without a separate foreclosure or receivership action. Section 8.3 of the Mortgage authorizes Wachovia to commence foreclosure of the mortgage on Capital Walk and any other security interest granted in the Loan Documents. Section 8.4 of the Mortgage permits Wachovia to seek the appointment of a receiver for the Capital Walk project. Section 8.5 of the Mortgage preserves Wachovia's rights under the applicable provisions of the Uniform Commercial Code. Section 8.7 of the Mortgage authorizes Wachovia to bring legal and other action to collect on the debt represented by the Loan Documents including, without limitation, by exercise of the right of setoff. After default, Wachovia may pursue any or all of these remedies, and others, in its discretion.

4

Under the Loan Documents, Wachovia initially provided construction financing for the Capital Walk project. The Loan Agreement contemplates Wachovia providing short term permanent financing, or "mini-perm" financing, extending from the expected completion of construction on December 3, 2008 through November 19, 2010. Under the Loan Agreement, the Debtor may obtain such mini-perm financing subject to the Debtor meeting certain conditions. Section 5.5 of the Loan Agreement details the conditions for conversion to mini-perm financing as follows:

> 5.5 **Conditions to Conversion**. [Wachovia's] obligation hereunder to convert the Construction Period to the Mini-Perm Period is conditioned upon [Wachovia's] receipt of the following, each in form and substance satisfactory to [Wachovia]:
>
> 5.5.1 each of the items set forth in subsection 5.4 hereof;
>
> 5.5.2 [The Debtor] must have satisfied all of the following conditions:
>
> a. At the commencement of the Mini-Perm Period, no monetary default or material non-monetary default by [the Debtor] shall exist under any of the Loan Documents and no event or circumstance shall exist which, with the giving notice or lapse of time or both, would constitute such a default by [the Debtor] thereunder;
>
> b. The improvements constituting the Project shall have been completed lien-free in substantial compliance with the terms of this Agreement and in substantial accordance with Plans and Specifications as approved by Lender;
>
> c. Certificates of Occupancy shall have been issued in connection with the Improvements; and
>
> d. The Project has stabilized by achieving a minimum ratio of "Net Income" from the Project to debt service coverage of 1.20 to 1 for the most recent ninety (90) consecutive days. "Net Income" shall mean gross rental receipts from the Project and any other income derived from the Project adjusted for the greater of: (i) actual vacancy; or (ii) a seven percent (7%) vacancy factor from the Project, minus the greater of: (i) actual operating expenses of the Project including 3% management fee and annual replacement reserves of $200

5

per unit; or (ii) the appraised Project operating expenses including a 3% management fee and annual reserves of $200 per unit. Debt service coverage shall be based on the Loan amount of $20,750,000, less any principal prepayments, a 30 year mortgage amortization, and an assumed per annum interest rate equal to the then current 10 year Treasury rate plus 2.5% per annum.

      e.     [The Debtor] shall have paid to [Wachovia] an extension fee of ¼ of 1% of the total principal balance of the Loan, together with any unfunded liability.

If the aforesaid conditions to conversion have not been satisfied on or before the termination of the Construction Period, the Loan shall not be converted to the Mini-Perm Period and the outstanding principal balance of the Loan, together with all accrued and unpaid interest thereon and all other amounts payable under the Loan Documents, shall immediately be due and payable.

The Construction Period ended on the second anniversary date of the Loan Agreement, or November 20, 2008. The Debtor requested conversion of the Wachovia construction loan to mini-perm financing pursuant to Section 5.5 of the Loan Agreement. Although the parties did not provide copies of all correspondence relating to this request, the Debtor provided copies of a response received from Wachovia and the Debtor's reply.

By letter dated January 28, 2009, Wachovia informed the Debtor that the Debtor failed to satisfy the requirements of Section 5.5.2(d) of the Loan Agreement. Section 5.5.2(d) requires, as a condition to conversion to mini-perm financing, that the Capital Walk project have achieved a minimum ratio of "Net Income" to debt service coverage of 1.20 to 1 for the most recent ninety (90) consecutive days. Section 5.5.2(d) provides:

"Net Income" shall mean gross rental receipts from the Project and any other income derived from the Project adjusted for the greater of: (i) actual vacancy; or (ii) a seven percent (7%) vacancy factor from the Project, minus the greater of: (i) actual operating expenses of the Project including 3% management fee and annual replacement reserves of $200 per unit; or (ii) the appraised Project operating expenses including a 3% management fee and annual reserves of $200 per unit. Debt service coverage shall be based on the Loan amount of $20,750,000, less any principal prepayments, a 30 year mortgage amortization, and an assumed per annum interest rate equal to the then current 10 year Treasury rate plus 2.5% per annum.

In its January 28, 2009 letter, Wachovia set out its calculation of the debt service coverage ratio required under the Loan Agreement. In determining the applicable income figure, Wachovia relied on the income statements for the period October 1, 2008 to December 5, 2008, supplied by the Debtor. Although this data did not cover the entire 90 day period to be analyzed under Section 5.5.2(d) of the Loan Agreement, this was the only information available to Wachovia. The Debtor provided no information detailing additional actual results. Noting that Section 5.5.2(d) requires the calculation to use the greater of actual vacancy or 7%, and that actual vacancy was higher, Wachovia used the actual vacancy figure. The Debtor does not dispute that actual vacancy was higher than 7%. Thus, Wachovia used the net "Rental Income" figure supplied by the Debtor to calculate total project income. Because the appraised project operating expenses exceeded actual project operating expenses, Wachovia subtracted the appraised project operating expenses from the total project income as required under Section 5.5.2(d). As provided under Section 5.5.2(d), Wachovia included a 3% management fee in the project operating expenses. Wachovia calculated this 3% fee based on actual project income. In light of the large vacancy rate, actual income was necessarily smaller than projected income, so calculating the management fee based on actual income resulted in a smaller management fee being included in project operating expenses. Likewise, Wachovia reduced the appraised project operating expenses to reflect the fact that certain utility expenses reflected in the appraised project operating expenses as payable at the project level are actually metered to individual units. Wachovia included only those utility expenses attributable to common area. Using the financial data provided by the Debtor and applying the provisions of Section 5.5.2(d) of the Loan Agreement, Wachovia calculated a debt service coverage ratio of 0.95 to 1. This is considerably lower than the 1.20 to 1 required as a condition to conversion to mini-perm financing.

The Debtor responded to Wachovia by letter dated February 2, 2009. The Debtor began by stating that it was "willing to pay" the extension fee required under Section 5.5.2(e) of the Loan Agreement. Under the Loan Agreement, such fee was to be paid "on or before the termination of the Construction Period," meaning no later than November 20, 2008. As of February 2, 2009, more than two months later, the Debtor had failed to pay the fee required for conversion of the construction loan to mini-perm financing. In the February 2, 2009 letter, the Debtor states that it disagrees with Wachovia's calculation of the debt service coverage ratio. The Debtor requests that Wachovia re-calculate the ratio using actual operating expenses rather than appraised operating expenses. The Debtor asks Wachovia to disregard certain units in the vacancy calculations because certificates of occupancy had not been issued for those units until later in the calculation period.[1] In the alternative, the Debtor requests that Wachovia use rental information for a later period than that required under the Loan Agreement. None of these requests is consistent with the express requirements of Section 5.5.2(d) of the Loan Agreement. In the February 2, 2009 letter the Debtor was, in effect, requesting a waiver of the provisions of the Loan Agreement.

Shortly before this exchange of letters, on December 3, 2008, Jerome L. Rich and Jodi L. Rich (together, the "Riches"), the Debtor, and Palm Bay West Development, LLC ("Palm Bay," and with the Riches and the Debtor, the "ARS Plaintiffs") filed a complaint against Wachovia in Florida state court. On December 30, 2008, Wachovia removed the action to the United States District Court for the Southern District of Florida. The original complaint was dismissed by the District Court on June 19, 2009, without prejudice to the filing of an amended complaint.

---

[1] Section 5.5.2(c) of the Loan Agreement requires that certificates of occupancy be obtained no later than termination of the Construction Period, meaning by November 20, 2008. Thus, the Loan Agreement itself contemplates that certificates of occupancy may be acquired during the period addressed in calculation of the debt service coverage ratio under Section 5.5.2(d).

On June 26, 2009, Wachovia filed a Verified Complaint against the Debtor, in the United States District Court for the Northern District of Florida, for breach of the Note and foreclosure of Wachovia's liens on the Capital Walk project and related assets.

On July 2, 2009, the ARS Plaintiffs filed an Amended Complaint against Wachovia in the United States District Court for the Southern District of Florida, seeking damages for alleged breach of fiduciary duty (Count I on behalf of all ARS Plaintiffs), negligent misrepresentation (Count II by the Riches), fraud (Count III by the Riches), and negligence (Count IV by the Riches). The Amended Complaint focused on the purchase by Wachovia for the Riches of certain investment products referred to as "auction rate securities," statements allegedly made by Wachovia in connection therewith, and Wachovia's alleged failure to assist the Riches with the sale or liquidation of the auction rate securities after they closed their investment accounts at Wachovia and transferred the auction rate securities to accounts at Smith Barney.

On July 28, 2009, the Debtor filed a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") with this Court.

On August 28, 2009, the Debtor filed its *Verified Complaint for Equitable Subordination* (the "Complaint") [DE 1] commencing this adversary proceeding. The Complaint seeks the entry of judgment against Wachovia equitably subordinating Wachovia's claims pursuant to Bankruptcy Code section 510(c) to the claims of general unsecured creditors and to equity interests in the Debtor.

On September 15, 2009, Wachovia filed a Motion to Dismiss the Amended Complaint filed by the ARS Plaintiffs in the District Court. The District Court granted the Motion to Dismiss in part. Noting that the Debtor never owned any auction rate securities, the District Court dismissed all claims asserted by the Debtor. The District Court found that the Debtor

9

"failed to point to any relationship between . . . Wachovia and the Debtor beyond the usual creditor-debtor relationship" and the "Plaintiffs' allegations as to the existence of a fiduciary duty and the purported breach of that duty relate entirely to the investment relationship between the Riches and Wachovia as to the [Auction Rate Securities] investment, not between Wachovia and . . . [the Debtor]." The District Court also dismissed all claims brought by Palm Bay and the claims of the Riches in Count III (fraud). The dismissal was without prejudice to the filing of a second amended complaint. The Debtor did not file a second amended complaint in the District Court action.

On October 9, 2009, Wachovia filed in this adversary proceeding its *Answer and Affirmative Defenses to Plaintiff's Verified Complaint for Equitable Subordination* [DE 10].

On November 23, 2009, Wachovia filed a secured claim in the Debtor's bankruptcy case in the amount of $20,478,016.14 plus attorneys' fees, costs and interest pursuant to the Loan Documents.

In the District Court action, the remaining claims of the Riches against Wachovia were tried without a jury in March, 2010. On April 7, 2010, the District Court entered Final Judgment for Wachovia, denying all relief requested by the Riches in that action.

On May 10, 2010, Wachovia filed the Motion under consideration here.

II.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the Court determines that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S.

10

317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 991 (11th Cir. 2001).

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex,* 477 U.S. at 323. "[O]nce the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, Federal Rule of Civil Procedure 56(e) shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (*citing Anderson*, 477 U.S. at 252).

III.    Analysis

"The common law principle of equitable subordination has long been recognized by the Supreme Court, *Pepper v. Litton*, 308 U.S. 295, 60 S. Ct. 238, 84 L. Ed. 281 (1939), and is specifically adopted as one of the bankruptcy courts' equity powers by 11 U.S.C. § 510(c)." *Salkin v. Chira (In re Chira)*, 353 B.R. 693, 723 (Bankr. S.D. Fla. 2006). Section 510(c) of the Bankruptcy Code provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
>
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

11

>    (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

> [Section] 510(c) adopts the long-standing judicially developed doctrine of equitable subordination under which a bankruptcy court has power to subordinate claims against the debtor's estate to claims it finds ethically superior under the circumstances.
>
> Proper exercise of the equitable subordination power can take place only where three elements are established:
>
>    (1)    The claimant must have engaged in some type of inequitable conduct,
>
>    (2)    The misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant,
>
>    (3)    Subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*In re Lemco Gypsum, Inc.*, 911 F.2d 1553, 1556 (11th Cir. 1990) (*citing Benjamin v. Diamond (In re Mobile Steel)*, 563 F.2d 692, 700 (5th Cir. 1977)).  Inequitable conduct may involve (a) fraud, illegality or breach of fiduciary duties; (b) undercapitalization; or (c) a claimant's use of the debtor as a mere instrumentality or alter ego.  *In re Clark Pipe & Supply Co.*, 893 F.2d 693, 699 (5th Cir. 1990) (citation omitted).

> The level of scrutiny exercised by the Court depends on the status of the claimant.
>
> Where the claimant is an insider or a fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct.  Once the trustee meets his burden, the claimant then must prove the fairness of his transactions with the debtor or his claim will be subordinated.  If the claimant is not an insider or fiduciary, however, the trustee must prove more egregious conduct such as fraud, spoliation or overreaching, and prove it with particularity.

*Estes v. N & D Props., Inc. (In re N & D Props., Inc.)*, 799 F.2d 726, 731 (11th Cir. 1986) (citations omitted).

The Court must first determine whether Wachovia is an insider or fiduciary of the Debtor. "A financial lending institution . . . does not generally owe fiduciary obligations to the customers to whom it lends." *In re Heartland Chems.*, 136 B.R. 503, 517 (Bankr. C.D. Ill. 1992) (citations omitted). An exception exists where the lending institution exerts dominion and control over its customers. *Id.* "A lending institution is held to a fiduciary standard only when it usurps the customer's ability to make business decisions. In effect, the lending institution must become the alter ego of the customer before it can be held to a fiduciary standard." *Id.* (internal and external citations omitted).

In this case, there is no allegation that Wachovia exercised dominion and control over the management of the Debtor such that Wachovia became a fiduciary of the Debtor. There is no allegation that Wachovia is an insider as defined in Bankruptcy Code section 101(31). Because Wachovia is neither an insider of the Debtor nor a fiduciary of the Debtor, the Debtor must prove with particularity that Wachovia engaged in "egregious conduct such as fraud, spoliation or overreaching" in order to equitably subordinate Wachovia's claim. *In re N & D Props., Inc.*, 799 F.2d at 731(citations omitted).

In the Complaint, the Debtor alleges that Wachovia "inequitably and in bad faith, attempted through economic coercion to affect (sic) a settlement in which the Riches would release the ARS claims . . . or risk liquidation of the Capital Walk project to the detriment of the Rich Capital creditors, including the Riches as well as their interests as creditors and members." According to the Debtor, Wachovia's inequitable and bad faith conduct included: (i) failing to convert the construction loan to mini-perm financing; (ii) attempting to coerce the waiver by the Riches and the Debtor of their legal claims in the District Court action; (iii) accelerating the obligations owing by the Debtor; (iv) freezing the Debtor's and the Riches' bank accounts; (v)

failing to provide information necessary to permit Smith Barney to liquidate the auction rate securities transferred from Wachovia to Smith Barney; (vi) commencing an action to foreclose its mortgage on the Capital Walk project; and (vii) requesting emergency appointment of a receiver for the Capital Walk project.

Wachovia argues that the Complaint fails to allege the requisite egregious conduct tantamount to fraud, overreaching, or spoliation. Wachovia states that its remedial actions were authorized under the Loan Documents and provides an Affidavit stating that the District Court action brought by the ARS Plaintiffs "had no bearing on the conversion of the Construction Loan to the Mini-Perm Period." Wachovia argues that certain allegations in the Complaint address actions allegedly taken by Wachovia against the Riches individually, and not the Debtor, and thus cannot support equitable subordination in the Debtor's chapter 11 case. Finally, in light of the District Court judgment in favor of Wachovia and against the Riches, Wachovia argues that the Debtor is precluded from re-litigating any of the issues relating to the auction rate securities.

A central question in this case is: Did Wachovia refuse to convert the Debtor's loan because it was sued by the Debtor, its principals and an affiliate in the District Court? As stated by the Debtor in its Response, "[t]he issue is not the merits of the auction rate securities claims and their application to the Debtor, but the fact of whether or not Wachovia refused to convert the Construction Loan to the Mini-Perm Financing because of the mere pendency of the District Court Action."

In support of its Motion, Wachovia filed the Affidavit of Mary Beth Gordish. In her Affidavit, Ms. Gordish states that Wachovia declined to convert the Debtor's construction loan to mini-perm because the Debtor failed to comply with two conditions under the Loan Agreement: (1) satisfaction of the debt service coverage ratio test under Section 5.5.2(d), and (2) payment of

14

the conversion fee under Section 5.5.2(e).  Ms. Gordish specifically states that the existence of the District Court action "had no bearing on the conversion of the Construction Loan to the Mini-Perm Period."

Wachovia provided copies of the Loan Documents.  In light of the unambiguous provisions of the Loan Documents, Wachovia's statements in the Affidavit, and the correspondence between the Debtor and Wachovia filed by the Debtor, the Debtor did not satisfy the requirements for loan conversion under Section 5.5.2 of the Loan Agreement, Wachovia properly accelerated the construction loan, the Debtor failed to pay the construction loan when due, and there was an event of default under the Loan Documents.  Each of Wachovia's remedial actions complained of by the Debtor—failing to convert the construction loan to mini-perm, accelerating the construction loan, freezing the Debtor's and the Riches' bank accounts, commencing foreclosure, and requesting appointment of a receiver—was specifically authorized under the Loan Documents.

The Debtor offers no contradictory evidence.  The Complaint in this adversary proceeding is verified by Jerome Rich.  To the extent it contains statements based on his personal knowledge, it may be relied on in place of an affidavit.  Nevertheless, the Complaint here contains no specific allegations of inequitable conduct by Wachovia.  The Court can find only two sentences in the Complaint that may constitute statements of fact supporting the Debtor's claims.  They are:  (1) "Wachovia in bad faith inequitably sought, at all times, to economically coerce the Riches to release their valid ARS claims as a precondition to closing;" and (2) "In the months after the discussions regarding Capital Walk's demand that Wachovia comply with the Construction Loan and Mini-Perm provisions, Wachovia inequitably and in bad faith, attempted through economic coercion to affect (sic) a settlement in which the Riches would release the

ARS claims . . . or risk the liquidation of the Capital Walk project to the detriment of the Rich Capital creditors, including the Riches as well as their interests as creditors and members." Other than the fact that the ARS Plaintiffs commenced the District Court action against Wachovia during the period Wachovia was asked to convert the Debtor's construction loan to mini-perm, the Debtor alleges no specific facts to support its allegation of wrongful conduct by Wachovia.  There is no affidavit recounting when, where and how Wachovia representatives attempted to coerce the Debtor.  There are no copies of correspondence or other documents supporting these allegations.  There is nothing other than the bald statements in the Complaint, supported only by the Debtor's suspicion.

A non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255, 1258 (11th Cir. 2010)  (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986)).  Wachovia met its burden by presenting evidence that, if un-contradicted, would entitle it to judgment here.  The burden then shifted to the Debtor to present specific facts contradicting those presented by Wachovia.  The Debtor did not meet this burden.

Even if the verified Complaint here contained specific allegations based on Mr. Rich's personal knowledge that might support a finding that Wachovia refused to convert the Debtor's loan because of the pendency of the District Court action, this would not be sufficient to permit an equitable subordination claim in this case.  Wachovia's refusal to convert the construction loan and its ensuing remedial actions were wholly authorized under the relevant provisions of the

16

Loan Documents.  Where a lender is not an insider or fiduciary of the debtor, the lender's conduct consistent with the material provisions of the parties' loan documents cannot rise to the level of egregious conduct required to equitably subordinate the lender's claim.  *In re Heartland Chems.*, 136 B.R. 503, 519 (Bankr. C.D. Ill. 1992) ("[A]s long as a lender's decision to cease making further advances is consistent with its contractual rights, it can do so 'for any reason satisfactory to itself.'") (*quoting Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir. 1990)).

To the extent the allegations in the Complaint concern remedial actions taken by Wachovia with regard to the Riches individually, they do not support a claim for equitable subordination in the Debtor's chapter 11 case.  A lender need not curtail remedial action against a guarantor merely because such action might make it more difficult for the primary borrower to recover from its own default.

To the extent the Complaint here relies on allegations relating to the auction rate securities owned by the Riches individually, all of those issues were presented in the District Court action, were actually litigated there, and were necessary and critical to the District Court judgment.  While the Debtor was no longer a party to the District Court action when it reached trial, the Debtor's interests were adequately represented by the remaining plaintiffs, its two sole owners.  The Debtor is precluded from re-litigating here any of the issues relating to the auction rate securities contained in the Complaint.

Lastly, the Court addresses the Debtor's request that Wachovia's claim be equitably subordinated not only to other claims in this case but also to the equity interests of the Debtor's members.  Although not necessary to the Court's ruling here, it is appropriate to address this issue to provide guidance to these and other litigants as to the Court's view on this issue.  One

17

need look no further than the text of Bankruptcy Code section 510(c) itself to determine that such relief is not authorized.  Section 510(c) permits equitable subordination of "all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."  There is no provision for the subordination of a claim to an interest.

IV.     Conclusion

Because Wachovia is not an insider or fiduciary of the Debtor, the first prong of the equitable subordination test requires the Debtor to prove with particularity that Wachovia's actions were egregious, tantamount to fraud, spoliation or overreaching.  There is sufficient evidence in the form of the Affidavit, the Loan Documents and correspondence between Wachovia and the Debtor, to negate the allegations made by the Debtor in the Complaint.  The Debtor did not respond with specific facts showing that Wachovia's acts were egregious.  Thus, there is no genuine issue of material fact relating to Wachovia's conduct.  As the Debtor failed to satisfy this first requirement in the equitable subordination analysis, it is not necessary for the Court to address whether there was injury to creditors or an unfair advantage conferred on Wachovia, or whether subordination would be inconsistent with the provisions of the Bankruptcy Code.

Accordingly, it is

ORDERED AND ADJUDGED that the Motion [DE 54] is GRANTED.  The Court will enter a separate final judgment consistent with this order.

###

Copies Furnished To:
Heather L. Ries, Esq.

*Heather L. Ries, Esq. is directed to serve a conformed copy of this Order on all interested parties and to file a certificate of service.*